*Decisions will be entered under Rule 50.*

ROYAL LITTLE AND AUGUSTA W. E. LITTLE, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56124. Filed December 29, 1958.

*Walter F. Gibbons, Esq.*, for the petitioners.
*James E. Markham, Jr., Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $24,542.51 in income tax of the petitioners for 1950. All of the facts of record, except as to the value of the Narragansett property before and after the storm, have been stipulated.

The first issue for decision is whether the Commissioner erred in holding that the expiration without exercise of an option to purchase stock resulted in a short-term capital loss of the $50,000 cost of the option rather than in an ordinary loss. The Commissioner, in determining the deficiency, explained that the expiration without exercise of Royal Little's option to purchase common stock of Textron, Incorporated, resulted in a short-term capital loss of the $50,000 cost of the option and did not result in an ordinary loss deduction.

The Commissioner recognized in his determination of the deficiency that the option to buy the Textron stock had cost Royal $50,000 and that he allowed it to expire without exercising it. The petitioners contend that this resulted in an ordinary loss from a transaction entered into for profit under section 23 (e) (2) and not a short-term capital loss as determined by the Commissioner. Section 117 (g) specifically provides that "gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as short-term capital gains or losses." The petitioners argue that the loss should be treated as an ordinary loss because the option was "granted in an employer-employee relationship" and "if Royal Little as an employee had exercised the option, he would have received ordinary income to the extent he was enabled to purchase the stock at a price less than the current market value at the time of the exercise of the option." No such exception is provided in section 117 (g) or elsewhere in the Code. The determination of the Commissioner on this item is sustained. *Nordblom Associates, Inc.*, 15 T. C. 220; *Southern Coast Corporation*, 17 T. C. 824.

The petitioners claim a deduction of $12,500 as a loss from casualty under section 23 (e). The Commissioner allowed only $3,000 of that loss. The petitioners acquired the residence property in 1944 at a cost of $12,500 and thereafter spent large amounts to improve it prior to November 25, 1950, when a storm caused substantial damage to the property which fronted directly on the Atlantic Ocean. The petitioners were not compensated by insurance or otherwise for that damage.

The petitioners introduced the deposition of a local realtor and appraiser who testified that the fair market value of the property before the storm was $37,500 and after the storm was not in excess of $25,000. The Commissioner offered no evidence in opposition. The appraiser was adequately qualified to place values on the property before and after the storm, and there is no reason to discount the values which he has given. The petitioners are entitled to a deduction in the full amount claimed.

The third and final issue is whether the petitioners are entitled to an ordinary loss deduction of $18,250 upon the surrender of a promissory note in consideration of the receipt of 6,000 shares of Textron stock. The Commissioner, in determining the deficiency, adjusted the net capital gain shown on the return by adding $37,209.46 to income with the explanation:

It is determined that the transaction between the taxpayer, Augusta W. E. Little, and American Associates, Inc., involving the exchange by taxpayer of a note of American Associates, Inc., having a principal payment provision of $100,000.00 and interest of 6%, for 6,000 shares of the common stock of Textron, Incorporated, did not result in loss deductible under the provisions of Section 23 of the Internal Revenue Code.

The Commissioner admits in his answer that Augusta "acquired" a note of American Associates, Inc., in the principal amount of $100,000 on February 15, 1949, at a cost of $100,000. American Associates, Inc., made an offer on September 22, 1950, "to exchange for its outstanding notes shares of Common Stock of Textron Incorporated on the basis of six shares of that stock for each $100. of face amount of notes." The offer was to remain open until September 30, 1950, and interest was to be paid on the notes through that date to noteholders who accepted the offer. Augusta accepted that offer on September 26, 1950, with respect to a note described as dated February 15, 1949, in the principal amount of $100,000 due May 31, 1955, with interest at 6 per cent, and 6,000 shares of Textron stock were delivered for her account on October 13, 1950. It is stipulated that the value of the stock which she thus received was $81,750.

The Commissioner, in disallowing the loss of $18,250 based upon the surrender of the $100,000 note upon the receipt of 6,000 shares of Textron stock, is not limited, as the petitioners try to limit him, to the question of whether or not section 24 (b) applies. The Commissioner did not state in determining the deficiency that this alleged loss was disallowed because of the applicability of section 24 (b). The error assigned in paragraph (4) (c) of the petition is that it was sustained in a transaction entered into for profit and is deductible under section 23 (e), but an alternative contention was made in the petition that it was a bad debt deductible under section 23 (k) (1).

It is not necessary to determine in this proceeding whether or not section 24 (b) applies. The Commissioner in his brief contends, *inter alia:*

> Under the facts of the instant case, the transaction appears to be either:
> * * *, or
> (2) an unexplained willingness of the petitioner to accept assets worth $81,750 for an obligation of $100,000. This apparent forgiveness of the balance due is without any showing that the debtor corporation was insolvent or incapable of paying its obligations as they became due.

The record does not show whether Augusta purchased this note from a third party or loaned the $100,000 to the corporation. It was a closely held corporation. The stipulation is that more than 50 per cent in value of its stock was owned throughout 1950 directly or indirectly by or for Augusta and about 70 per cent of the stock was owned by a trust in which the taxpayers' children were the beneficiaries. That being so, the transaction must be closely scrutinized to determine just what happened. It is also stipulated that at all times pertinent American Associates, Inc., was solvent and capable of meeting its obligations. The question naturally arises, why did Augusta surrender in September 1950, for property worth $81,750, a note which she had acquired in February 1949 at a cost of $100,000? The record offers no satisfactory answer to this question. The petitioners argue that she did it because of certain contingent liabilities to which the debtor was subject. But those contingent liabilities were no different in September 1950 from what they were in February 1949 so far as this record shows. It is entirely possible that Augusta, in accepting property worth only $81,750 for her note which shortly before had cost her $100,000, was making a contribution to the corporation of the difference through partial forgiveness of the indebtedness.

The stipulation is entirely inconsistent with the debt being worthless, and that aspect of the case can be disregarded. There is reason to believe that the petitioners knew the value of the Textron stock at the time it was delivered to or for Augusta. An offer of 5 shares of Textron stock for every $100 of debentures was made at the same time the offer was made to the noteholders of 6 shares for each $100 of notes. The outstanding debentures were in the amount of $128,585. The record does not show what their cost may have been to the various holders or why they may have accepted the offer. There were only two other noteholders beside Augusta. One was "Mrs. Ora Williams Green 10,000." The record does not show who she was or why she might have been willing to accept less than $10,000 for her note. The other was a trust which held a note for $140,000 and it also held debentures in the amount of $52,470. This may have been the trust that owned the 70 per cent of the stock of the debtor. There is no

direct evidence that any of the debenture holders or any of the other noteholders accepted the offer of September 22, 1950, but a balance sheet of May 31, 1951, does not include any of the debentures or notes in question. This meager record does not justify a holding that the petitioners sustained a deductible loss of $18,250 on the surrender of the $100,000 note.

*Decision will be entered under Rule 50.*