THEODORE R. KIELTS AND ANNE M. KIELTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kielts v. Commissioner
Docket No. 17660-79.
United States Tax Court
T.C. Memo 1981-329; 1981 Tax Ct. Memo LEXIS 419; 42 T.C.M. (CCH) 238; T.C.M. (RIA) 81329; June 24, 1981. Michael D. Brenner and Joseph Falcone, for the petitioners. Joan J. Fahlgren, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 4,747.81 in petitioners' Federal income tax for the year 1977. After certain concessions by petitioners, the issues presented for decision in this case are (1) whether the disappearance of a diamond from the mounting of *420 a ring owned by petitioners is a deductible casualty loss under section 165(c)(3), [1](2) whether petitioners have proved their adjusted basis for the stone, and (3) whether there was a proper disallowance of sales tax claimed on petitioners' 1977 Federal income tax return. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Theodore R. Kielts and Anne M. Kielts (petitioners) are husband and wife, who resided in Farmington Hills, Michigan at the time they filed their petition in this case. Petitioners filed their joint Federal income tax return for the taxable year 1977 with the Internal Revenue Service Center at Cincinnati, Ohio. In July, 1972 petitioner Theodore R. Kielts (hereinafter referred to as Theodore) bought a marquise-cut, 2.47 carat diamond for his wife, petitioner Anne M. Kielts (hereinafter referred to as Anne). He had the diamond set in a six-pronged, slot-lock ring mounting. The appraised value of the stone at the time of purchase was $ 10,520, excluding sales *421 tax. Theodore cleaned the ring several times a year. In addition, at least every eighteen months he took the ring to a jeweler, Mr. Willard Locke, who cleaned and polished the ring and checked the security of the stone's mounting. On December 20, 1977 while Anne was filing her nails, the diamond seemed securely set in its mounting. Within the next hour, Anne washed laundry, drove to the bank to cash a check, and to Great Scott supermarket to shop for groceries. When Anne wrote a check for the food, the cashier noticed the stone was no longer in the ring. Anne began an intensive search of the area. She informed the supermarket manager of the loss. Together they searched the store, often on hands and knees, even removing food items from shelves where the diamond might have dropped. A few of the other customers also aided Anner in her unsuccessful effort. An extremely thorough search was made of petitioners' home and automobile. Theodore combed through vacuum sweepings and laundry drainage traps, and petitioners even used an ultraviolet light to try to pick out the diamond's fluorescence from the carpet pile. The search continued for several days but the diamond was not found. *422 When the petitioners examined the ring after the loss of the diamond, two of the prongs were missing, and the claws on the opposite side of the ring were forced upward, indicating that a fairly strong blow had struck one side of the ring. The damaged ring was taken to Mr. Locke who repaired the mounting and had the missing stone replaced with a smaller diamond, again marquise cut. Petitioners did not carry insurance on the ring, and they received no insurance compensation for the loss of the diamond. The value of the diamond at the time of the loss was $ 19,700. OPINION In this case we must decide whether the loss of a diamond from a ring owned by petitioners constitutes a casualty loss deductible under section 165(c)(3). In order to qualify under this section, the loss must "not [be] compensated for by insurance or otherwise," must arise from a "fire, storm, shipwreck, or other casualty, or from theft," and must exceed $ 100. The doctrine of ejusdem generis has been used to interpret the limits of the phrase "other casualty" within section 165(c)(3). Popa v. Commissioner, 73 T.C. 130 (1979); *423 White v. Commissioner, 48 T.C. 430 (1967). Although older cases allowed a deduction for "other casualties" only in cases where a loss "was of similar character to a fire storm, or a shipwreck," Smith v. Commissioner, 10 T.C. 701, 705 (1948), the doctrine now is applicable to accidental losses caused by sudden and unexpected force. White v. Commissioner, supra at 435; Popa v. Commissioner, supra at 133. Respondent argues that petitioners' loss cannot qualify as an "other casualty" under section 165(c)(3) because they could not point to the event that caused the diamond to disappear from its setting. He argues that the loss also must be sudden, unexpected, and unusual to be deductible as a casualty loss. This position conforms to the respondent's statements in Revenue Ruling 72-592, 1972-2 C.B. 101, issued after our opinion in White v. Commissioner, supra.
Petitioners argue that their loss is allowable under the doctrine of ejusdem generis as currently developed in the case law. They also deny that the requirements of Revenue Ruling 75-592, supra *424 , if followed, would prevent their recovery. In White v. Commissioner, supra, a car door slammed on the hand of the taxpayer, breaking the prongs in the setting of her diamond ring. When she shook her hand in pain, the stone was irretrievably lost in the gravel driveway. We held this to be a deductible casualty loss because the events giving rise to the loss were "sudden, unexpected, violent and not due to deliberate or willful actions by petitioners." White v. Commissioner, supra at 433-434. In the present case an expert witness testified that in his thirty-five years of experience he had never seen a diamond simply fall out of a setting, and it was improbable that this event might occur without a traumatic cause. In the few cases he had seen where a stone became disengaged from its mounting there were identifiable causes, such as a ring being dropped or being caught in a door. It is not necessary to pinpoint the exact moment of the loss when, as here, some precipitating event must have occurred in the hour between the time Anne last observed her ring intact and the time the empty setting was discovered. See Popa v. Commissioner, supra *425 (Because petitioner was away on a business trip, he could not prove the precise manner in which property was destroyed, yet the unexpected withdrawal of the United States from Saigon constituted "suddenness" sufficient to meet the casualty loss requirement). [2]
The force that broke the prongs of Anne's ring, although not as immediately painful as in White, was still sudden, unexpected, and violent in impact. No loss is allowed in cases where damage results from progressive deterioration, Matheson v. Commissioner, 54 F.2d 537 (2d Cir. 1931, affg. 18 B.T.A. 674 (1930) (water damage to beach residence foundation); Hoppe v. Commissioner, 42 T.C. 820 (1964), affd. 354 F.2d 988 (9th Cir. 1965) *426 (gradual dry rot). Before a deduction is allowed for a sudden loss, the facts of each case are considered in order to determine whether the requisite "suddenness" can be found. Popa v. Commissioner, supra at 133; Hoppe v. Commissioner, supra at 823; Kilroe v. Commissioner, 32 T.C. 1304 (1959); Burns v. United States, 174 F. Supp. 203, 208-209 (N.D. Ohio 1959), affd. 284 F.2d 436 (6th Cir. 1960). The loss in the present case would be considered sudden, whether "suddenness" is determined with reference to the event itself or measured by the time interval between cause of a loss and manifestation of an effect. See Maher v. Commissioner, 76 T.C.     (Apr. 8, 1981). Anne saw the uninjured ring one hour before the loss was discovered. The setting was checked and the ring cleaned by Theodore within one month and was examined by a jeweler within eighteen months of the loss. On these facts we conclude that the diamond did not disappear as a result of progressive deterioration and that the cause of such a loss was not an ordinary, common or easily predicted occurrence. The circumstances *427 of this loss indicate that there was a sudden, unexpected, destructive blow to the ring that, although unnoticed by petitioner in her rush to perform her morning chores, caused damage to the ring's setting and the resulting loss of the diamond. This loss is not one of the frivolous claims that section 165(c)(3), as presently enacted with the $ 100 limitation, tries to prevent. White v. Commissioner, supra at 437. [3] The reports of the House and Senate on the Revenue Act of 1964 state under their general reasons for the new provision: *428 [I]n the case of nonbusiness casualty and theft losses, it is appropriate in computing taxable income to allow the deduction only of those losses which may be considered extraordinary, nonrecurring losses, and which go beyond the average or usual losses incurred by most taxpayers in day-to-day living * * * * This means that * * * casualty and theft losses will continue to be deductible * * * in those cases where they are sufficient in size to have a significant effect upon an individual's ability to pay Federal income taxes. [S.Rep. No. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 561; H.Rep. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 125, 175-176.] Despite their precautions, petitioners have lost a valuable item; certainly beyond a loss they would expect to suffer in their "day-to-day living." The loss was not a result of any willful behavior on the part of petitioners. White v. Commissioner, supra at 435. Although Anne's actions in part may have caused the blow that dislodged the diamond, absent willfulness, negligence has no bearing on whether a casualty has occurred. Farber v. Commissioner, 57 T.C. 714, 718 (1972); *429 White v. Commissioner, supra at 434-435. Thus we allowed a deduction in Carpenter v. Commissioner, T.C. Memo. 1966-228, when a husband inadvertently threw his wife's diamond ring into a garbage disposal because the damage resulted from the application of suddenly occurring force to property before the owners had a chance to act to prevent the loss. [4] The ring in the present case was damaged by an unusual blow that caused petitioners to suffer a sudden and unexpected loss of a valuable item and they are entitled to a casualty loss in an amount equal to their adjusted basis in the diamond.
The amount of deductible loss for a casualty is its adjusted basis, as determined under section 165(b). Helvering v. Owens, 305 U.S. 468 (1939). Petitioners amended their pleadings at trial to claim the full price paid for the gem. Respondent did *430 not object, and we therefore permitted the amendment to reflect the full purchase price of the diamond. Petitioners have established by appraisal statements the value of the diamond when purchased in 1972 and its value immediately after its loss. The value of a lost item can be determined from the testimony of experienced appraisers and from all other evidence available. Little v. Commissioner, 31 T.C. 607 (1958), affd. 273 F.2d 746 (1st Cir. 1960). [5] Here the value of the diamond at the time of the loss was $ 19,700. Theodore purchased it for $ 10,520 plus $ 420 sales tax. Therefore, petitioners will be allowed a casualty loss deduction in the amount of $ 10,520 less the $ 100 floor. Petitioners presented no evidence with regard to the disallowance of general sales tax in the amount of $ 247.73. Accordingly, we sustain respondent on this issue. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, unless otherwise indicated.↩
2. Cf. Jones v. Commissioner, 24 T.C. 525 (1955) (theft loss deduction allowed for a brooch that disappeared when the exact manner of theft was unknown, but circumstances indicated it had been stolen). But cf. Allen v. Commissioner, 16 T.C. 163↩ (1951) (theft deduction denied for brooch lost in museum).
3. Before section 165 was amended in 1964 to include the $ 100 floor there were many cases where taxpayers attempted to take a casualty loss deduction under the "other casualty" language. These cases generally involved small sums of money. Dyer v. Commissioner, T.C. Memo. 1961-141; Diggs v. Commissioner, T.C. Memo. 1959-99, affd. 281 F.2d 326 (2d Cir. 1960), cert. denied 364 U.S. 908 (1960); Boston v. Commissioner, a Memorandum Opinion of this Court dated June 17, 1952; Gilliam v. Commissioner, a Memorandum Opinion of this Court dated May 2, 1952. Although cases involving larger amounts of money also were denied the use of the ejusdem generis doctrine, they were sometimes able to fit within the theft loss provisions in order to qualify for a deduction. Compare Smith v. Commissioner, 10 T.C. 701 (1948) with Jones v. Commissioner, 24 T.C. 525↩ (1955).
4. But see Keenan v. Bowers, 91 F. Supp. 771↩ (E.D.S.C. 1950) (Casualty loss not allowed when tissue containing rings flushed down toilet, ejusdem generis interpreted narrowly).
5. See Kraus v. Commissioner↩, a Memorandum Opinion of this Court dated Oct. 31, 1951.