*Decisions will be entered under Rule 50.*

RUDOLF LEWIS HOPPE AND ANN ERNA HOPPE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1725–62. Filed July 28, 1964.

Rudolf Lewis Hoppe, pro se.
*Eugene H. Ciranni*, for the respondent.

RAUM, *Judge:* Petitioners contend that they are entitled to a deduction for a casualty loss under section 165(c)(3) of the 1954 Code [1] in respect of the dry rot damage discovered in their house in November 1959.

Section 165(c)(3) speaks of losses arising from "fire, storm, shipwreck, or other casualty * * *." And the term "casualty" has been interpreted to mean "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." *Fay* v. *Helvering*, 120 F. 2d 253 (C.A. 2); *United States* v. *Rogers*, 120 F. 2d 244, 246, 122 F. 2d 485 (C.A. 9); *Matheson* v. *Commissioner*, 54 F. 2d 537, 539 (C.A. 2); *Leslie C. Dodge*, 25 T.C. 1022, 1026. Thus, the foregoing cases have denied deductions for losses due to such causes as termites, dry rot, and rust.

An exception to this rule appears to have developed in recent years in the case of the "fast termite," where it has been held that termite damage may qualify as a casualty loss if it occurs within a relatively short period of time. *Rosenberg* v. *Commissioner*, 198 F. 2d 46 (C.A. 8); *Joseph Shopmaker* v. *United States*, 119 F. Supp. 705 (E.D. Mo.); *Buist* v. *United States*, 164 F. Supp. 218 (E.D. S.C.). And this Court has undertaken to follow this line of cases in *E. G. Kilroe*, 32 T.C. 1304, stating that the "term 'suddenness' is comparative, and gives rise to an issue of fact," noting that the claimed deductions for termite losses were disallowed in some cases while allowed in others (pp. 1306–1307).

The alleged casualty before us involves dry rot rather than termites, but we do not understand either of the parties to suggest that anything here turns upon this difference. [2] Accordingly, the question before us under *Kilroe* is the factual one whether the dry rot discovered in petitioners' house in November 1959 was of comparatively recent origin

---

[1] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

  *      *      *      *      *      *      *

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual the deduction under subsection (a) shall be limited to—

  *      *      *      *      *      *      *

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *

[2] In *United States* v. *Rogers*, 120 F. 2d 244 (C.A. 9), the loss deduction was claimed for damage by "termites or dry rot." In denying the deduction the court said that "damage by termites or dry rot is not a sudden occurrence but is a development over a longer period of time" (p. 246).

so as to qualify for the requisite degree of "suddenness." [3] Petitioners' position in substance is that the fungus infestation began as the result of the unusually heavy rains in January, February, March, and April of 1958; that the ensuing damage occurred over the following period of some 18 to 22 months; and that such period is sufficiently short to justify classifying the loss as characterized by the necessary "suddenness" to qualify as a "casualty."

We might well hesitate to say that a period of some 3 months that we approved in *Kilroe* may be expanded to some 18 to 22 months without subjecting the whole theory of "comparative suddenness" to a *reductio ad absurdum*, but we do not reach that point because we cannot find that the dry rot in question had its beginning at the time of those rains in the first part of 1958 rather than at some substantially earlier date. Petitioners' contention that the fungus infestation began with those rains is based upon the assumption that their house was free of dry rot after the September 1956 inspection and repair of the property as recommended in the inspection report. Although we had the impression at the time of the trial that there might be a basis for that assumption, a careful study of the record has satisfied us that the assumption is without foundation.

The inspection report specifically states that it is "confined to the substructure" of the building "unless otherwise specified." And the report does not "otherwise" specify that it dealt with those portions of the house, above the first floor level, in which the damage now before us was sustained. The principal items in controversy are the sheathing and studs behind the external stucco walls, particularly within a few feet of the windows and under the roof ventilators. The area involved is entirely above the substructure. To be sure there was testimony by Hoppe that the inspector made some test holes in the stucco, but he did not testify that such holes were made at a level *above* the subfloor, and the inspector did not recall making any such holes.[4] It must be remembered that the burden is upon petitioners, and we are not convinced on this record that the areas here involved were free of dry rot at the time of the 1956 inspection. In the circumstances, the 1958 rains might well have furnished merely additional moisture for a continuous process of decay that had already been in progress for some time. In view of the state of the record we cannot

---

[3] In *Kilroe* the termite infestation was discovered in April 1955 where the property was found to have been free of termites in January 1955. In the *Rosenberg* case, 198 F. 2d 46, 51, the Court of Appeals for the Eighth Circuit said: "Comparatively speaking, an invasion of a colony of termites which destroys the timbers of a building in a month, three months, or a year, is a sudden destruction * * *." The termite invasion occurred within a period of 1 year in *Rosenberg*, 14 months in *Shopmaker*, and 9 months in *Buist*.

[4] A former neighbor testified that he saw some test holes in the stucco, but it is far from clear that he intended his testimony to convey the thought that the holes were punched above the subfloor level. In any event, we could hardly rely upon such testimony to contradict the fair import of the inspection report.

find that petitioners have established the correctness of their assumption that the 1958 rains caused the damage in issue. It is therefore unnecessary to determine whether, had they carried their burden in this respect, there would otherwise have been compliance with the statutory requirement for deduction. Nor is it necessary to fix the amount of damage that would have been deductible, although our findings show that the amount deducted on petitioners' return plainly comprehended components that could not under any theory be classified as dry rot damage.

*Decision will be entered for the respondent.*