**Rudolf Lewis HOPPE and Ann Erna Hoppe, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 19759.**

United States Court of Appeals Ninth Circuit.

Dec. 30, 1965.

Rehearing Denied Feb. 4, 1966.

Rudolf L. Hoppe, Ann Erna Hoppe, in pro. per.

Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Marco S. Sonnenschein, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

HAMLIN, Circuit Judge.

Rudolf L. Hoppe and Ann E. Hoppe, petitioners herein, filed a joint income tax return for the year 1959 in which they claimed a deduction for a casualty loss in the amount of $5,752.00 by reason of their discovery in that year of dry rot damage to their home in Richmond, California. The deduction was disallowed by the Commissioner of Internal Revenue, respondent herein, who assessed a deficiency in tax against petitioners in the sum of $1,222.96. Petitioners timely filed a petition with the Tax Court for a redetermination of this deficiency under 26 U.S.C. § 6213. After a trial, the Tax Court rendered its decision in favor of the Commissioner [1] and petitioners timely petitioned this court for a review of the decision of the Tax Court. We have jurisdiction under 26 U.S.C. § 7482.

The facts as found by the Tax Court show that in 1959 petitioners owned a frame stucco residence in Richmond, California. This building was constructed in 1948 and petitioners have occupied it since that time. In November, 1959, petitioners contracted to have certain structural changes made, including the replacement of certain windows and the closing of a door. As a part of this work peti-

---

1. Rudolf Lewis Hoppe, 42 T.C. 820 (1964).

tioner Hoppe was to do work in removing a back porch. When petitioner commenced the work of dismantling the porch he found dry rot in the sheathing, and upon removing "the stucco all around the house * * * found dry rot fungus infestation under the roof ventilators, in the sheathing in all the walls, particularly within two to three feet of each side of the windows throughout the house down to the ground floor but not down into the basement area, and around the studs at each corner."

The cost of making the necessary repairs was deducted in the year 1959 by the petitioners, their contention being that such a deduction was a casualty loss under the provisions of 26 U.S.C. § 165 as set out in the margin.[2] The petitioners base their contention on certain prior events. In 1956, in anticipation of selling their property, petitioners had the building inspected by Terminix of Northern California, Inc., a structural pest control inspector duly licensed by the State of California, hereinafter referred to as Terminix. After such inspection, Terminix made a report outlining its findings, which included the finding of dry rot in various locations in the house, and made recommendations that certain work be done. All the work recommended by Terminix was done by them and the work was completed in September, 1956. The petitioners then presented evidence showing that in the year 1958 and particularly during the months of February to April, 1958, the records of the United States Weather Bureau showed that there had been rain storms of unusual amount and intensity which established a record rainfall for 31 years in each of these months. It was the contention of petitioners that the dry rot found in 1959 was the result of the unusual rains in January through April, 1958, and "that the ensuing damage occurred over the following period of some 18 to 22 months; and that such period is sufficiently short to justify classifying the loss as characterized by the necessary 'suddenness' to qualify as a 'casualty'."[3]

The Tax Court in its decision did not find it necessary to reach a determination of the merits of petitioners' contention as to whether the necessary "suddenness to qualify as a casualty" was present in this case. Nor do we.

In discussing this point the Tax Court stated as follows:

"* * * but we do not reach that point because we cannot find that the dry rot in question had its beginning at the time of those rains in the first part of 1958 rather than at some substantially earlier date.

2. § 165. Losses
(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
  *       *       *       *       *
(c) Limitation on losses of individuals. —In the case of an individual, the deduction under subsection (a) shall be limited to—
  *       *       *       *       *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return.

3. 42 T.C. at 824.
The Tax Court referred to certain cases which had considered the question

of what was the necessary suddenness required to classify the occurrence as a casualty. Some of them excluded the "progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941); United States v. Rogers, 120 F.2d 244, modified on other grounds, 122 F.2d 485 (9th Cir. 1941); Matheson v. Commissioner of Internal Revenue, 54 F.2d 537 (2d Cir. 1931); and Leslie C. Dodge, 25 T.C. 1022 (1956). Other cases holding that termite damage might qualify as a casualty loss if it occurs within a relatively short period of time were Rosenberg v. Commissioner of Internal Revenue, 198 F.2d 46, 41 A.L.R.2d 684 (8th Cir. 1952); Shopmaker v. United States, 119 F.Supp. 705 (E.D.Mo.1953); and E. G. Kilroe, 32 T.C. 1304 (1959), 42 T.C. at 823.

Petitioners' contention that the fungus infestation began with those rains is based upon the assumption that their house was free of dry rot after the September 1956 inspection and repair of the property as recommended in the inspection report * * *.

"The inspection report specifically states that it is 'confined to the substructure' of the building 'unless otherwise specified.' And the report does not 'otherwise' specify that it dealt with those portions of the house, above the first floor level, in which the damage now before us was sustained. The principal items in controversy are the sheathing and studs behind the external stucco walls, particularly within a few feet of the windows and under the roof ventilators. The area involved is entirely above the substructure. To be sure there was testimony by Hoppe that the inspector made some test holes in the stucco, but he did not testify that such holes were made at a level *above* the subfloor, and the inspector did not recall making any such holes. It must be remembered that the burden is upon petitioners, and we are not convinced on this record that the areas here involved were free of dry rot at the time of the 1956 inspection. In the circumstances, the 1958 rains might well have furnished merely additional moisture for a continuous process of decay that had already been in progress for some time. In view of the state of the record we cannot find that petitioners have established the correctness of their assumption that the 1958 rains caused the damage in issue. It is therefore unnecessary to determine whether, had they carried their burden in this respect, there would otherwise have been compliance with the statutory requirement for deduction." [4]

The above quotation from the decision of the Tax Court indicates that its deci-sion was based entirely upon factual considerations shown by the evidence. We have examined the record and hold that there was substantial evidence in the record to support the factual findings of the Tax Court, and accordingly we must affirm its judgment. Judgment affirmed.