Lyle W. Mader and Twylah F. Mader v. Commissioner.
Mader v. Commissioner
Docket No. 1346-65.
United States Tax Court
T.C. Memo 1966-176; 1966 Tax Ct. Memo LEXIS 108; 25 T.C.M. (CCH) 917; T.C.M. (RIA) 66176; July 28, 1966
*108 In November 1960 petitioners purchased a used automobile that had been driven about 6,400 miles. About 2 years later, in December 1962, while returning from Florida, the motor overheated. For approximately 2 months thereafter petitioner Lyle W. Mader drove the car to and from work, a distance of about 8 miles one way. About March 3, 1963, he had the car repaired at a net cost to him of $561.80. At that time the speedometer registered 42,262 miles. Held, petitioners are not entitled to deduct for the taxable year 1962 the cost of repairs as a "casualty" loss under section 165(c)(3), I.R.C. 1954. Lyle W. Mader, pro se, 17115 Old Baltimore Rd., Olney, Md. Dennis R. Powell, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1962 in the amount of $168.34. The only issue is whether the respondent erred in disallowing an alleged "casualty" loss of $561.80 deducted by petitioners on their 1962 joint income tax return. Findings of Fact Some of the facts were stipulated and such facts are incorporated herein by reference. Petitioners are husband and wife with residence at all times material hereto at 17115 Old Baltimore Road, Olney, Md. They filed their joint Federal income tax return for the taxable year 1962 with the district director of Maryland. During November 1960 petitioners purchased a 1960 model Mercedes-Benz automobile at a cost of $2,450. At the time the said automobile was purchased, it had approximately 6,400 miles registered on the speedometer. Sometime in December 1962 petitioner Lyle W. *110 Mader, hereinafter referred to as petitioner, was returning from a trip to Florida when an unusual noise came from the automobile motor, the temperature indicator went off scale, and petitioner was obliged to stop the car, while out in the country. After a short stop, and after the noise from the motor had subsided petitioner proceeded to the next town where he added water and oil to the car. Thereafter, the car "seemed to behave pretty well" so petitioner drove on to his home. Shortly thereafter petitioner took the car to McNey-Motors, Inc., in Bethesda, Md., and told them there was something wrong with the car and asked that they give it a certain "cycle check" that is scheduled for automobiles of this make. The check was performed and petitioner was informed that one cylinder of the motor had no pressure and that petitioner would have to have some repair work on it sooner or later but that it would not be necessary to have it done immediately. Petitioner then drove the car to and from work, which was a distance of about 8 miles one way. Petitioner's occupation is that of a physicist in electronics engineering. About two months later, in March 1963, petitioner took the car to McNey-Motors *111 at their Washington, D.C., shop, and had it repaired at a net cost to him of $561.80. At that time, March 3, 1963, the automobile speedometer registered 42,262 miles. The mechanic who did the repair work found that the pressure oil valve stuck so that the oil did not go to a particular cylinder; that the key or pin that fastens the piston into the system came out and scored the cylinder walls; that the pin gouged a large hole in the wall and then apparently went back in place, and that as long as the pin stayed in place there was no trouble except that there was no pressure for that particular cylinder. The mechanic who did the repair work could not understand how the damage could occur, so he consulted with the Mercedes-Benz representatives and they agreed that the situation was unusual; that it should not have occurred; and further agreed to pay one-half of the cost of the damaged parts. At no time could petitioner recall having had any external force invade the engine of the automobile. Among the itemized deductions claimed by petitioners on their 1962 Federal income tax return was "Casualty losses (See attached sheet) $561.80." The attached sheet gave as an "Explanation" *112 for the claimed deduction the following: Motor damage - cause unknown $561.80 In December 1962, something occurred in the motor of my car. It made a terrible sound and over heated. This only lasted a few minutes and then got better. I took the car to the garage and they said one cylinder was bad and had no compression. They thought that a piston had a hole in it. They estimated a cost of from $600.00 to $700.00 for repairs. I could not afford to have it fixed then but did have it repaired in March. When repairs were made the mechanic said that it appeared that the pin holding the piston to the piston rod had worked out and rubbed against the side of the cylinder and then worked back into place. The car was just out of warranty period but the motor company paid 50% on parts cost. A copy of the repair bill is attached. A summary of the said repair bill, which was stipulated is as follows: New Parts: 6 items
$341.10
8 items
36.66
$377.76
Outside repairs (4 items)
69.28
Labor: R & R Engine & Overhaul Complete
180.00
Recondition Cyl Head
60.00
Ck & Repair Fuel System
36.00
Oil
3.00
Tax
6.31
$732.35
Paid by motor company (50% of
$341.10)
170.55
Paid by petitioner
$561.80
*113 The respondent disallowed the claimed deduction with this explanation: The claimed loss is disallowed since you have failed to substantiate the amount of the alleged loss or that the loss was the result of a casualty. Progressive deterioration does not constitute a casualty. Ultimate Facts Petitioners did not sustain a deductible casualty loss in the taxable year 1962 within the meaning of section 165(c)(3), Internal Revenue Code of 1954, by reason of the damage to the motor of their Mercedes-Benz automobile. Opinion Petitioners contend they are entitled to deduct $561.80 as a casualty loss in the calendar year 1962 under section 165(c)(3) of the Internal Revenue Code of 1954. [1] We do not think the entire amount would be deductible in any event, but we need not explore this phase of the case for we do not believe, and have so found as an ultimate fact, that petitioners did not sustain a "casualty" loss by reason of the damage to the motor of their automobile. *114 In Ray Durden, 3 T.C. 1, we had occasion to consider the meaning of the term "casualty" as used in the various income tax statutes. In our opinion in that case, among other things, we said: Under the doctrine of ejusdem generis, it is necessary to define the word "casualty" in connection with the words "fires, storms, shipwreck" immediately preceding it. "Casualty" has been variously defined, including "an undesigned, sudden and unexpected event" - Webster's New International Dictonary; also as "an event due to some sudden, unexpected or unusual cause" - Matheson v. Commissioner, 54 Fed. (2d) 537. The term "casualty" "excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 Fed. (2d) 253; also, "an accident or casualty proceeds from an unknown cause or is an unusual effect of a known cause. Either may be said to occur by chance and unexpectedly." Chicago, St. Louis & New Orleans Railroad Co. v. Pullman Southern Car Co., 139 U.S. 79. * * * However, it has been held, under section *115 23(e)(3), that an automobile wreck may be a casualty in closest analogy to shipwreck. Shearer v. Anderson, 16 Fed. (2d) 995, and Regulations 103, section 19.23(e)-1, approves as a deductible item loss occasioned by damage to an automobile and resulting from the faulty driving of the taxpayer or another operating the automobile, or from the faulty driving of another automobile colliding with it. In Anderson v. Commissioner, 81 Fed. (2d) 457, it is held, under section 23(e)(3), that losses arising from ordinary highway mishaps may be deducted even though caused by the negligence of the taxpayer. * * * the prime element is that of suddenness as opposed to some gradually increasing result. * * * The measure of damages is the difference between the value of the properties immediately preceding the casualty and the value immediately thereafter. * * * In a more recent case, Clinton H. Mitchell, 42 T.C. 953, the taxpayer claimed as casualty losses "expense due to several tire blowouts." In denying the claim, we said (pp. 971-972): It is well established that the term "casualty" as used in the statute means "an accident, a mishap, some sudden invasion *116 by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering, (C.A. 2) 120 F. 2d 253. See also United States v. Rogers, (C.A. 9) 120 F. 2d 244; Matheson v. Commissioner, (C.A. 2) 54 F. 2d 537; Leslie C. Dodge, 25 T.C. 1022; and Rudolf Lewis Hoppe, 42 T.C. 820. The only evidence presented by the petitioner on this issue is his testimony to the effect that due to moving a heavy trailer hurriedly across the country he incurred expenses which he charged to casualties, which included some expense due to several tire blowouts. In his original return he indicated that the tire blowouts were due to overloading the trailer. Accordingly, it does not appear that any loss resulting from tire blowouts was occasioned by any accident, or invasion of any hostile agency. In addition, insofar as appears from the record any such loss may have resulted from the progressive deterioration of the tires. * * * In the instant case petitioners' car had not been involved in any accident or collision of any kind. Petitioner, when asked on cross-examination if he recalled *117 "striking anything or having any outside force in any manner strike the engine", answered "No. There was nothing." It seems to us that what occurred in December 1962 when petitioner was returning from Florida is no different from the motor trouble many people have after they have driven their cars as long as the instant automobile had been driven. The car was two years old when petitioners acquired it and at that time it had been driven approximately 6,400 miles. At the time the repairs were made in March 1963, which was a little over 2 months after the trouble developed, the speedometer registered 42,262 miles so, since petitioner was then only driving the car to and from work, a distance of about 16 miles a day, the car must have been driven over 40,000 miles at the time of the alleged casualty. Under these circumstances, it is difficult to say that the trouble petitioner experienced while returning from Florida in December 1962 was not due to progressive deterioration rather than to a sudden external force. See Fay v. Helvering, 120 F. 2d 253 (C.A. 2, 1941), affirming 42 B.T.A. 206, wherein the court said the word "casualty" "denotes an accident, a mishap, *118 some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." Accordingly, it is our conclusion that the breakdown of the motor in petitioners' automobile did not constitute a "casualty" loss within the meaning of section 165(c)(3), supra. Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. "(a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
"(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * *
"(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *"↩