GEORGE K. NOTTER AND LORRAINE B. NOTTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Notter v. Commissioner
Docket No. 129-82.
United States Tax Court
T.C. Memo 1985-391; 1985 Tax Ct. Memo LEXIS 244; 50 T.C.M. (CCH) 614; T.C.M. (RIA) 85391; August 5, 1985. *244 Held: (1) Petitioners are not entitled to a casualty loss deduction under section 165(c)(3), I.R.C. 1954, for 1978. (2) Petitioners are not entitled to a residential energy credit under section 44C, I.R.C. 1954, for 1978 and 1979. (3) Petitioners are not entitled to deduct patent licensing expenses for 1978 and 1979. (4) Liability determined for additions to tax under section 6653(a), I.R.C. 1954, for 1978 and 1979. George K. Notter and Lorraine B. Notter, pro se. Daniel P. Ramthun, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to tax under section 6653(a)[1] as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
1978
$11,354.41
$567.72
1979
14,308.52
715.43 After concessions by both sides, the issues for decision [2] are as follows: (1) Whether petitioners are entitled to a casualty loss deduction on account of the loss of three trees; (2) Whether petitioners are entitled to a residential energy credit under section 44C; (3) Whether *245 petitioners are entitled to deduct claimed patent licensing expenses; and (4) Whether petitioners are liable for an addition to tax under section 6653(a) for each of the years in issue. [2]
For convenience, our Findings of Fact and Opinion for each issue will be combined. FINDINGS OF FACT--GENERAL Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners George K. Notter (hereinafter sometimes referred to as "Notter") and Lorraine B. Notter, husband and wife, resided in Orinda, California. Issue I. Casualty Losses
FINDINGS OF FACT A drought in the winter of 1976-1977 weakened three of the trees on petitioners' property. Later, the trees were attacked by bark beetles. The three trees died. In 1978, petitioners had the three trees removed, for which they paid $320. Sixteen trees remained on *246 the property which were larger than the ones removed. Petitioners claim a casualty loss deduction of $3,705 [3] on their 1978 tax return. Respondent disallowed the entire amount. OPINION Petitioners assert that each tree was worth more than $4,000 and that the trees' deaths "rapidly followed beetle infestation." Respondent maintains that petitioners' loss is not deductible because it was not sudden and unexpected; he also contends that petitioners have failed to meet their burden of proving the amount of their loss. We agree largely with respondent. Section 165[4] *247 *248 permits individuals to deduct nonbusiness casualty losses to the extent not compensated for by insurance or otherwise. The measure of such a loss has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis. See Helvering v. Owens,305 U.S. 468, 471 (1939); Lamphere v. Commissioner,70 T.C. 391, 395 (1978); section 1.165-7(b)(1), Income Tax Regs.
Trees are treated as an integral part of residential real property, and no separate basis or determination of loss is allocated to them. The loss from damage to, or killing of, trees is the decrease in the value of the overall property. Western Products Co. v. Commissioner,28 T.C. 1196, 1219 (1957); section 1.165-7(b)(2)(ii), Income Tax Regs. Thus, we do not focus on the separate value of the trees. Petitioners have the burden of proving entitlement to a casualty loss. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [5] Beyond Notter's bare assertion that "the value of those trees was ascertained by * * * reputable witnesses," we have no evidence as to the fair market value of the property neither before nor after the trees died. We are not convinced that the fair market value of the property after it was cleared of the three dead trees was less than the fair market value of the property before the beetle attack. However, we believe that, if a person acquired property on which there were trees *249 that were the victims of a bark beetle attack, then that person would expect to cut down and remove the dead trees, and that person would reduce any offering price by the expected cost of this clearing operation. This, of course, would result in a reduction in fair market value. Thus, the $320 that petitioners paid to remove the three dead trees would be evidence of a reduced fair market value of the property in the instant case. If a difference in the fair market value of the property represented the sole test that a casualty loss had to pass in order to be deemed deductible, then we would be inclined to conclude that some loss deduction is allowable. However, section 165(c)(3) speaks of losses arising from "fire, storm, shipwreck, or other casualty * * *." The term "casualty" has been interpreted to mean "some sudden invasion by a hostile agency," but excluding the progressive deterioration of property through a "steadily operating cause." Hoppe v. Commissioner,354 F.2d 988, 989 (CA9 1965), and the cases cited therein, affg. 42 T.C. 820, 823 (1964). The suddenness of the loss is *250 measured by the lapse of time between the precipitating event and the loss proximately caused by that event. Maher v. Commissioner,76 T.C. 593, 600 (1981), affd. 680 F.2d 91 (CA5 1982). See Coleman v. Commissioner,76 T.C. 580 (1981). Although we have allowed casualty loss deductions for the loss of trees because of beetle attacks, those cases specifically involved southern pine beetle attacks on pine trees, where there was ample evidence to establish that the time between the attack and the deaths of the trees was short--up to 30 days. [6]
The record in the instant case does not establish the length of time involved in the deaths of petitioners' trees. According to Notter, the three trees died "within a time frame of one year". We have found that there was a drought in the winter of 1976-1977 in petitioner's area. However, we have no indication as to when the beetles attacked the trees. Furthermore, petitioners have failed *251 to establish the lapse of time between the beetle attack and the deaths of the three trees. In addition, we have no idea as to the type of trees involved and how long it ordinarily takes for bark beetles to strike their death below. Thus, whether we consider the precipitating event to be the drought or the beetles, petitioners have failed to establish the suddenness of their loss under section 165(c)(3). We hold for respondent on this issue. Issue II. Residential Energy Credit
FINDINGS OF FACT 1978
In 1978, petitioners purchased movable shutters and spent $85.41 to have the shutters installed on the south and east sides of their residence. On their 1978 tax return, petitioners claim an expenditure for insulation (including the shutters) in the amount of $721.57 for which they claim a $108.22 residential energy credit. Respondent disallowed the entire amount. 1979
In 1979, petitioners spent $200 for floor insulation. On their 1979 tax return, petitioners claim an expenditure for a solar renewable energy source item in the amount of $5,000 for which they claim a $1,200 residential energy credit. This item, a tank in the back yard, was already on the property when petitioners bought *252 their residence, about 1968. The $5,000 claimed expenditure was not spent in 1979. On their 1979 tax return, petitioners claim an unused energy credit carryover from 1978. On their 1978 tax return, petitioners claim only the $108.22 residential energy credit described supra.
Respondent disallowed all the residential energy credits that petitioners claim on their 1979 tax return. OPINION As to 1978, respondent contends that (1) petitioners' expenditure of $85.41 for installation of shutters does not qualify as an energy conservation expenditure and (2) petitioners have failed to substantiate any arguably relevant 1978 expenditures other than the stipulated $85.41. Petitioners maintain that they also bought an insulating tank cover in 1978 and that their expenditures for the cover and the shutters qualify as energy conservation expenditures. As to 1979, respondent concedes that the $200 floor insulation expenditure is a qualified energy conservation expenditure and that credit is allowable therefor. Respondent contends that no credit is allowable on the $5,000 solar renewable energy claim, since petitioners did not incur the expenditure. We agree with respondent as to both years. *253 Under section 44C[7] *254 *255 *256 *257 *258 (redesignated as sec. 23 for 1984 and thereafter by secs. 471 and 475(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 825, 847) a residential energy credit is allowable for certain expenditures made during the taxable year. Among the qualifying expenditures are those for insulation. In order to qualify as insulation, the item must be "specifically and primarily designed to reduce when installed in or on a dwelling (or water heater) the heat loss or gain of such dwelling (or water heater)." (See. 44C(c)(3)(A).) Also, the item "must be installed between a conditioned and nonconditioned area * * *." Section 1.44C-2(c)(1), Income Tax Regs. Specifically listed as items which do not qualify as insulation are awnings and exterior siding. See section 1.44C-2(c)(1), (4), Income Tax Regs. In addition, if the item's function is primarily structural, decorative, or safety-related, it will not qualify under section 44C. Section 1.44C-2(c)(4), Income Tax Regs.
Petitioners, upon whom the burden of proof rests ( Welch v. Helvering,supra; Rule 142(a)), have failed to explain how the shutters are qualifying insulation. Petitioners have not introduced any evidence as to the specific and primary design of the shutters or that the shutters were not installed for decorative reasons. Furthermore, petitioners have failed to substantiate any of their claimed additional expenditures in 1978 for insulation.[8] As a result, we conclude that petitioners are not entitled to any residential energy credit for 1978. For 1979, regardless of petitioners' theory as to the claimed $5,000 expenditure for a renewable energy source item, since the expenditure was not made during 1979, no credit is allowable. Neither side has dealt with the claimed carryover. Petitioners have the burden of proof; they have failed to establish *259 that any unused energy credit carryover existed from the preceding year, as claimed on their 1979 tax return. Accordingly, apart from respondent's concession, we conclude that petitioners are not entitled to a residential energy credit for 1979. We hold for respondent on this issue. Issue III. Patent Licensing Expenses
FINDINGS OF FACT During 1978 and 1979, Notter was employed by California as a chemist in the State's food and drug laboratory. On the Schedules C of their tax returns for 1978 and 1979, petitioners state that they are in the business of patent licensing and claim deductions for the items and in the amounts shown in table 1. Table 1 Item
1978
1979
Depreciation (home, furniture and
$1,482.00
$1,490.00
fixtures, machinery and other
equipment, and books)
Periodicals
258.00
260.00
Equipment
874.71
880.50
Supplies - Chemicals
541.61
Laboratory Items
202.68
"Legal - Travel - Safety"
4,638.98
1,088.58
Materials
297.18
565.76
"Ins-Adv"
838.14
"Ins-Adv-Storage"
583.86
"Auto-Tel"
1,820.00
1,830.40
Total Deductions
10,750.62
$6,901.78
Notter was involved in the development of about 40 foreign patents in the 1960's; however, petitioners' claimed 1978 and 1979 patent licensing deductions do not relate to these foreign *260 patents. Notter also was involved in the development of about eight United States patents before 1960; all eight were assigned to the United States Department of Agriculture and were not licensed overseas. Notter did not own any United States patents in the years in issue, but he had foreign rights to the United States Department of Agriculture patents that he had developed. Notter traveled to Germany in September 1978, spending $1,134 for air fare and $220 for lodging. Petitioners did not receive any income from patents after 1969, through 1983; they did not have any gross receipts from patents in 1978 and 1979. Respondent disallowed the entire amounts shown in table 1. However, at trial the parties stipulated that, of the Schedule C amounts (table 1, supra), petitioners are entitled to deduct, as employee business expenses ("below the line"), $200 for 1978 and $150 for 1979. OPINION Petitioners assert that Notter held patents "with INTENT to produce income" and that they have substantiated their claimed deductions. Respondent contends that petitioners have failed to carry their burdens of proving (1) that the expenses were incurred and (2) that the expenses were incurred in connection *261 with a trade or business or an activity engaged in for the production of income. We agree with respondent. Section 162(a)[9] allows deductions for expenses of a trade or business, and section 212[10] allows deductions with respect to an income-producing activity or property held for the production of income. Petitioners have the burden of proof on the matters in dispute on this issue. Welch v. Helvering,supra; Rule 142(a). Petitioners last received incoe from patents at least nine years before the earlier of the years *262 in issue; they did not even have gross receipts from patents in 1978 and 1979. Notter's testimony with regard to his patent-producing activities in the 1960's is wholly inadequate to support any conclusion about the status of these activities in 1978 and 1979, the years in issue in the instant case. Also, the evidence in the record does little to substantiate the claimed expenses. We conclude that petitioners have failed to carry their burden of proving any error in respondent's determinations (apart from the stipulations, supra, as to $200 for 1978 and $150 for 1979). We hold for respondent on this issue. Issue IV. Section 6653(a)--Negligence, Etc.
FINDINGS OF FACT Notter is a chemist. He evidently has the intelligence to create patentable inventions. Although petitioners claimed large deductions on their tax returns for 1978 and 1979, petitioners did not maintain adequate records and as a result, at trial, they were incapable of substantiating most of their claimed deductions. Petitioners were negligent in failing to keep such records, and this negligence resulted in at least part of their underpayment for 1978 and 1979. OPINION Respondent contends that petitioners are liable *263 for an addition to tax under section 6653(a) for each of the years in issue because petitioners disregarded the minimum recordkeeping reqirements demanded of every taxpayer. Petitioners respond that they "substantiated every item that was not declared 'out of the ordinary' by the respondent." They also assert that they "acted in good faith and could not have known the thinking of the IRS prior to audit." We agree with respondent. An addition to tax under section 6653(a)[11] *264 is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations.Petitoners have the burden of proving error in respondent's determinations that the additions to tax should be imposed against them. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Under section 6001[12] *265 and section 1.6001-1(a) and (e), Income Tax Regs., a taxpayer must keep such permanent books of account or records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on his tax return. Petitioners' failure to keep the records necessary to substantiate many of their claimed deductions for 1978 and 1979--a failure which petitioners have not adequately explained--indicates that petitioners were negligent. Not only have petitioners failed to prove error by respondent in this matter, but the record supports the conclusion that petitioners were negligent. We hold for respondent on this issue. To take account of concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue.↩
2. The parties have agreed as to the amounts of petitioners' medical expenses; however, because of the three-percent "floor", the amounts of the medical expense deductions are derivative and depend on settled issues and on our resolution of one of the issues in dispute.↩
3. A loss of $3,805, less the $100 "floor" of section 165(c)(3) (n.4, infra↩).
4. Section 165 provides, in pertinent part, as follows: SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. * * * [The subsequent amendments of this provision (by sec. 203(b) of the Tax Equity And Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 422; and by sec. 711(c)(2)(A)(i) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 943) do not affect the instant case.]
5. Unless indicated otherwise, all rule references are to the Tax Court Rules of Practice & Procedure.↩
6. Black v. Commissioner,T.C. Memo. 1977-337; Nelson v. Commissioner,T.C. Memo. 1968-35. In Cristo v. Commissioner,T.C. Memo. 1982-514↩, respondent conceded that casualty losses had been sustained by reason of two attacks on pine trees by southern pine beetles.
7. Section 44C provides in relevant part as follows: SEC. 44C. RESIDENTIAL ENERGY CREDIT. (a) General Rule.--In the case of an individual, there shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the sum of-- (1) the qualified energy conservation expenditures, plus (2) the qualified renewable energy source expenditures. (b) Qualified Expenditures.--For purposes of subsection (a)-- (1) Energy conservation.--In the case of any dwelling unit, the qualified energy conservation expenditures are 15 percent of so much of the energy conservation expenditures made by the taxpayer during the taxable year with respect to such unit as does not exceed $2,000. (2) Renewable energy source.--In the case of any dwelling unit, the qualified renewable energy source expenditures are the following percentages of the renewable energy source expenditures made by the taxpayer during the taxable year with respect to such unit: (A) 30 percent of so much of such expenditures as does not exceed $2,000, plus (B) 20 percent of so much of such expenditures as exceeds $2,000 but does not exceed $10,000. * * * (c) Definitions and Special Rules.--For purposes of this section-- (1) Energy conservation expenditures.--The term "energy conservation expenditure" means an expenditure made on or after April 20, 1977, by the taxpayer for insulation or any other energy-conserving component (or for the original installation of such insulation or other component) installed in or on a dwelling unit-- (A) which is located in the United States, (B) which is used by the taxpayer as his principal residence, and (C) the construction of which was substantially completed before April 20, 1977. (2) Renewable energy source expenditure.-- (A) In general.--The term "renewable energy source expenditure" means an expenditure made on or after April 20, 1977, by the taxpayer for renewable energy source property installed in connection with a dwelling unit-- (i) which is located in the United States, and (ii) which is used by the taxpayer as his principal residence. * * * (3) Insulation--The term "insulation" means any item-- (A) which is specifically and primarily designed to reduce when installed or in or on a dwelling (or water heater) the heat loss or gain of such dwelling (or water heater), * * * (C) * * *, and (D) which meets the performance and quality standards (if any) which-- (i) have been prescribed by the Secretary by regulations, and (ii) are in effect at the time of the acquisition of the item. (4) Other energy-conserving component.--The term "other energy-conserving component" means any item (other than insulation)-- (A) which is-- (i) a furnace replacement burner designed to achieve a reduction in the amount of fuel consumed as a result of increased combustion efficiency, (ii) a device for modifying flue openings designed to increase the efficiency of operation of the heating system, (iii) an electrical or mechanical furnace ignition system, which replaces a gas pilot light, (iv) a storm or thermal window or door for the exterior of the dwelling, (v) an automatic energy-saving setback theremostat, (vi) caulking or weatherstripping of an exterior door or window, (vii) a meter which displays the cost of energy usage, or (viii) an item of the kind which the Secretary specifies by regulations as increasing the energy efficiency of the dwelling, * * * (C) * * *, and (D) which meets the performance and quality standards (if any) which-- (i) have been prescribed by the Secretary by regulations, and (ii) are in effect at the time of the acquisition of the item. (5) Renewable energy source property.--The term "renewable energy source property" means property-- (A) which, when installed in connection with a dwelling, transmits or uses-- (i) solar energy, energy derived from the geothermal deposits (as defined in section 613(e)(3), or any other form of renewable energy which the Secretary specifies by regulations, for the purpose of heating or cooling such dwelling or providing hot water for use within such dwelling, or (ii) wind energy for nonbusiness residential purposes, * * * (C) * * *, and (D) which meets the performance and quality standards (if any) which-- (i) have been prescribed by the Secretary by regulations, and (ii) are in effect at the time of the acquisition of the property. * * * (7) When expenditures made; amount of expenditures.-- (A) In general.--Except as provided in subparagraph (B), an expenditure with respect to an item shall be treated as made when original installation of the item is completed. (B) Renewable energy source expenditures.--In the case of renewable energy source expenditures in connection with the construction or reconstruction of a dwelling, such expenditures shall be treated as made when the original use of the constructed or reconstructed dwelling by the taxpayer begins. (C) Amount.--The amount of any expenditure shall be the cost thereof. [The subsequent amendments of this provision, by sec. 202 of the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96-223, 94 Stat. 229, 258, do not affect the instant case.]
8. On opening brief, petitioners claim to have spent $261 on an "insulating tank cover" in 1978. Statements on brief do not constitute evidence. Reiff v. Commissioner,77 T.C. 1169, 1175↩ (1981); Rule 143(b).
9. Section 162(a) provides, in relevant part, as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
10. Section 212 provides, in relevant part, as follows: SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or manintenance of property held for the production of income; * * *↩
11. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. [The subsequent amendments of this provision (by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96-223, 94 Stat. 229, 253; by sec. 722 (b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342; and by sec. 107(a)(3) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2365, 2391) do not affect the instant case.] ↩
12. SEC. 6001. NOTICE OR REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title. * * *