T.C. Summary Opinion 2005-114


UNITED STATES TAX COURT


FRANCIS N. AND PATRICIA A. LEONARD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7893-03S.                Filed August 4, 2005.


Francis N. and Patricia A. Leonard, pro sese.

Michael F. O'Donnell, for respondent.


CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 2000.  Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $25,746, and a section 6662(a) accuracy-related penalty of $2,412, with respect to petitioners' 2000 Federal income tax.

The issues for decision are: (1) Whether petitioners are liable for the 10-percent additional tax imposed by section 72(t) with respect to a distribution from a qualified retirement plan, (2) whether petitioners are entitled to a casualty loss deduction not claimed on their 2000 joint Federal income tax return, and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

Background

Some of the facts have been stipulated and are so found. Petitioners are, and were at all times relevant, married to each other. At the time the petition was filed, they resided in Midlothian, Illinois. References to petitioner are to Francis N. Leonard.

In 1978, petitioners purchased a house which had been built about 1905. Petitioners had a deck built on the back of the house in 1995 at a cost of approximately $7,000. The deck was attached, in part, to the siding on the backside of petitioners' house. The deck was insured by petitioners' homeowner's policy with Illinois Farmers Insurance Company (Farmers Insurance) at a value of $9,000.

In August 2000, the deck collapsed during a graduation party for petitioners' son. In addition to the damage to the deck, some siding on the back of petitioners' house was damaged.

Petitioners submitted a claim of $18,035 with Farmers Insurance for the damage caused by the collapsed deck. The insurance claim included the replacement cost of $6,500 for a smaller deck and the replacement cost of $3,500 for siding on petitioners' house. After inspection, Farmers Insurance determined that the damage to the deck and the siding on petitioners' house was due to "wear and tear and deterioration, wet rot and dry rot." Petitioners' insurance claim was denied because their insurance policy specifically denied coverage for losses due to "wear and tear, marring, deterioration", as well as "rust, mold, wet or dry rot".

After the denial of petitioners' claim, petitioners filed a claim with the State of Illinois Department of Insurance (Department of Insurance). In a letter from the Department of Insurance, petitioners were likewise notified:

> All insurance policies contain language that excludes
> any kind of rot or deterioration. For your policy to
> provide coverage for the collapse of your deck, you
> will need to provide some type of proof or evidence
> that it was not rot whether it be wet or dry rot that
> caused the collapse. Also be advised that if it was
> improper construction, that also is not covered by an
> insurance policy.

During 2000, petitioners rebuilt a smaller deck and made major repairs to their house, including repairs to the siding on

the back of the house, the foundation, the kitchen, various windows and doors, a portion of the roof, and the electrical components under the house. Petitioners estimated the total expenditures to be approximately $30,000.

About 1985, petitioner began working as a heavy equipment operator. He suffers from chronic back problems, and in 1988 he was diagnosed with osteoporosis. Over the years, despite his back problems, petitioner continued to work as a heavy equipment operator.

In 2000, petitioner informed his employer that he wanted to be placed on disability due to the continued problems with his back. Petitioner's employer denied his disability request, and as a result, petitioner resigned from his employment. Petitioner also applied for, and was denied, Social Security disability benefits. After being denied disability benefits, petitioner continued to work as a heavy equipment operator for several different employers during 2001 and 2002. As of the date of trial, petitioner continued to hold a special operator's license to operate heavy equipment.

During 2000, petitioner received a distribution of $68,444 from his qualified retirement plan (the distribution). As of the close of 2000, petitioner had not attained the age of 59-1/2. Federal income tax withholdings of $13,688 were withheld from the

distribution. The distribution was used, in part, to pay for building the above-mentioned deck and repairs to the house.

Petitioners filed a timely 2000 joint Federal income tax return that was prepared by H&R Block. The distribution is not included in the income reported on that return, and no part of the tax liability reported on the return is attributable to section 72(t). Petitioners elected to itemize deductions but did not claim a casualty loss deduction on their 2000 return.

In the notice of deficiency, respondent determined that the entire amount of the distribution is includable in petitioners' 2000 income. Respondent further determined that the entire distribution was subject to the additional tax imposed by section 72(t) and imposed a section 6662(a) accuracy-related penalty. Other adjustments made in the notice of deficiency are computational and need not be addressed.

Discussion

Petitioners now agree that the distribution is includable in their 2000 income but argue that they are not liable for the section 72(t) additional tax because the retirement distribution was attributable to petitioner's disability. Petitioners also claim that they are entitled to a casualty loss deduction for the collapsed deck. Finally, petitioners argue that they are not liable for the accuracy-related penalty under section 6662(a).

1.  The Casualty Loss Deduction

In general and in addition to other types of losses, an individual is entitled to a deduction for the loss of property if the loss arises from fire, storm, shipwreck, or other casualty and is not compensated for by insurance or otherwise.  Sec. 165(a), (c)(3).  "Other casualty" is defined as a loss proximately caused by a sudden, unexpected, or unusual event, excluding the progressive deterioration of property through a steadily operating cause or by normal depreciation.  Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), affg. 76 T.C. 593 (1981); Coleman v. Commissioner, 76 T.C. 580, 589 (1981).  There must be a causal connection between the alleged casualty and the loss claimed by the taxpayer.  Kemper v. Commissioner, 30 T.C. 546, 549-550 (1958), affd. 269 F.2d 184 (8th Cir. 1959). Whether damage qualifies as a casualty typically turns on whether the damage satisfies the suddenness requirement, which denotes an accident, a mishap, or some sudden invasion by hostile agency rather than progressive deterioration of property through steadily operating cause.  Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940).  In considering whether wood rot damage qualified as a casualty, we have held that the "suddenness" of the loss itself (the lapse of time between the precipitating event and the loss proximately caused by that event) is a determining factor.  Hoppe v. Commissioner, 42 T.C.

820, 823 (1964), affd. 354 F.2d 988 (9th Cir. 1965). We have also held that wood rot damage may qualify as a casualty loss if it was of "comparatively recent origin so as to qualify for the requisite degree of 'suddenness'." Id. at 823-824; see also Kilroe v. Commissioner, 32 T.C. 1304 (1959). In this regard, the burden is on petitioners to prove their entitlement to a casualty loss deduction. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Respondent contends that the collapsed deck and related damage to the house do not give rise to a casualty loss deduction because the loss is attributable to deterioration that occurred during an extended period of time. Petitioners contend that if wood rot was the cause of the collapse of the deck, it was "hidden" and they "were not aware of it."

After inspection by Farmers Insurance, it was determined that the cause of the collapse of the deck was wood rot and deterioration. Although concealed, after the collapse of the deck, the wood rot became obvious, even to petitioners. Nothing in the record suggests that the wood rot was a "sudden" occurrence, or that it did not progress, as it usually does, over an extended period of time. Hoppe v. Commissioner, supra.

The collapse of petitioners' deck was the result of wood rot and deterioration. The damages and losses resulting from the collapse of the deck were not caused by a "sudden" event, and

therefore the collapse of the deck was not a casualty within the meaning of section 165. Petitioners are not entitled to a casualty loss deduction.

2. Section 72(t)

Section 72(t)(1) imposes an additional tax on early distributions from qualified retirement plans "equal to 10 percent of the portion of such amount which is includable in gross income." Petitioners now concede that the entire amount of the distribution is includable in their 2000 income but take the position that the section 72(t) additional tax is not applicable because petitioner was disabled at the time the distribution was made.

Among other exceptions, none of which apply here, section 72(t)(2)(A)(iii) provides an exception for distributions "attributable to the employee's being disabled within the meaning of subsection (m)(7)". Section 72(m)(7) defines the term "disabled" as follows:

> (7) Meaning of disabled.--For purposes of this section, an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof of the existence thereof in such form and manner as the Secretary may require.

The determination of whether a taxpayer is disabled is made on the basis of all the facts. Sec. 1.72-17A(f)(2), Income Tax

Regs.  The regulations emphasize that the "substantial gainful activity" to which section 72(m)(7) refers is the activity, or a comparable activity, in which the individual customarily engaged prior to the disability.  Sec. 1.72-17A(f)(1), Income Tax Regs. The regulations also provide that the nature and severity of the impairment are the primary consideration in determining whether an individual is able to engage in any substantial gainful activity.  Id.  Other factors to consider in the evaluation of the impairment include the taxpayer's education, training, and work experience.  Id.  Therefore, the impairment must be evaluated in terms of whether it does, in fact, prevent the individual from engaging in his customary, or any comparable, substantial gainful activity.  Sec. 1.72-17A(f)(2), Income Tax Regs.

Additionally, the impairment must be expected either to continue for a long and indefinite period or to result in death. Sec. 1.72-17A(f)(3), Income Tax Regs.  In this context, the term "indefinite" means that it cannot reasonably be anticipated that the impairment will, in the foreseeable future, be so diminished as no longer to prevent substantial gainful activity.  Id.  More specifically, the regulations provide that "An individual will not be deemed disabled if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging

in his customary or any comparable substantial gainful activity."
Sec. 1.72-17A(f)(4), Income Tax Regs.

According to respondent, petitioner was not disabled within the meaning of section 72(m)(7). We agree.

Although petitioner suffered from chronic back problems over the years, he continued to work as a heavy equipment operator until 2002. In fact, after receiving the distribution, petitioner worked "six days a week, 12 hours a day."

We find that petitioner's chronic back problems did not prevent him from returning, and, in fact, petitioner did return, to comparable substantial gainful activity as a heavy equipment operator. Therefore, we find that petitioner was not disabled within the meaning of section 72(m)(7) at the time of the distribution. Accordingly, petitioners are liable for the 10-percent additional tax pursuant to section 72(t).

3. The Section 6662(a) Penalty

Section 6662(a) imposes an accuracy-related penalty of 20 percent of any portion of an underpayment of tax that is attributable to a substantial understatement of income tax. Sec. 6662(b)(2), (d). An understatement of income tax is a substantial understatement of income tax if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the taxpayer's return. Sec. 6662(d)(1). Ignoring conditions not relevant here, for purposes of section 6662, an

understatement is defined as the excess of the amount of the tax required to be shown on the taxpayer's return over the amount of the tax which is shown on the return. Sec. 6662(d)(2)(A).

Under section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty under section 6662(a). To meet that burden, respondent must come forward with sufficient evidence to show that imposition of the penalty is appropriate. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). We have sustained, or petitioners have conceded, the determinations in the notice that give rise to the deficiency that respondent determined. In addition, we have rejected petitioners' position that they are entitled to a casualty loss deduction. Respondent has satisfied his burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) determined in the notice.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners bear the burden of proof that they had reasonable cause and acted in good faith with respect to the understatement. Higbee v. Commissioner, supra at 449.

Petitioners dispute the imposition of the penalty. According to petitioners, the penalty should not apply because they relied on the advice of a paid income tax preparer.

The general rule is that taxpayers have a duty to file complete and accurate tax returns and cannot avoid the duty by placing responsibility with an agent. United States v. Boyle, 469 U.S. 241, 252 (1985); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). In limited situations, the good faith reliance on the advice of an independent, competent professional in the preparation of the tax return can satisfy the reasonable cause and good faith exception. United States v. Boyle, supra at 250-251; Weis v. Commissioner, 94 T.C. 473, 487 (1990). However, reliance on the advice of a professional tax adviser does not necessarily demonstrate reasonable cause and good faith. See sec. 1.6664-4(b)(1), Income Tax Regs. All facts and circumstances must be taken into account. Sec. 1.6664-4(c)(1), Income Tax Regs. The advice must be based upon all pertinent facts and the applicable law. Sec. 1.6664-4(c)(1)(i), Income Tax Regs. The taxpayer cannot establish reasonable reliance if he fails to disclose facts that the taxpayer knows, or should know, are relevant to the proper tax treatment of an item. Id. The advice must not be based on unreasonable factual or legal assumptions. See sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

Apart from passing references to the tax return preparer in petitioner's testimony, the record is devoid of evidence to support petitioners' claim that the position taken on their 2000 return was consistent with the tax return preparer's advice. Petitioners did not call their tax return preparer as a witness. There is no evidence establishing the qualifications of petitioners' tax return preparer or that petitioners provided their tax return preparer with all relevant information.

Respondent's imposition of the section 6662(a) accuracy-related penalty is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent.