WILLIAM D. SHIELDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shields v. Commissioner
Docket No. 19863-84.
United States Tax Court
T.C. Memo 1987-495; 1987 Tax Ct. Memo LEXIS 490; 54 T.C.M. (CCH) 711; T.C.M. (RIA) 87495; September 28, 1987. *490 Petitioner's shrimp boat sank at its mooring shortly after an on-board water pump failed. Held: petitioner is entitled to a casualty loss under sec. 165(a) in an amount determined under the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). After the sinking of his boat, petitioner secured employment in Decatur, Georgia, while maintaining his residence in Houston, Texas. Held, having maintained no records as required by sec. 274 petitioner is not entitled to unreimbursed employee business expenses. Held further, petitioner is liable for an addition to tax under sec. 6651(a)(1). William D. Shields, pro se. Donald W. Williamson, Jr., for the respondent. WHITAKER
WHITAKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1981 in the amount of $ 8,083. Respondent also determined an addition to tax for that year under section 6651(a)(1)[1] in the amount of $ 1,200.90. The issues presented to us are: (1) Whether petitioner is entitled to a loss under section 165(a) on the sale of the oil screw Captain Allen; (2) whether petitioner is entitled to deductions for meals, lodging and travel while working in Decatur, Georgia; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein *493 by reference. At the time he filed his petition herein, petitioner was a resident of Atlanta, Georgia. He filed his 1981 Federal income tax return with the Internal Revenue Service Center in Chamblee, Georgia. In October 1980, while residing in Houston, Texas, petitioner purchased a previously repossessed commercial fishing boat, the Captain Allen, from Merchants Park Bank of Houston, Texas, (Bank) for $ 13,082.76. In turn, petitioner executed a note and gave the Bank a mortgage on the boat [2] which he intended to use in the commercial fishing business. Petitioner had little, if any experience in commercial fishing, having previously been employed as a draftsman and engineer. While he owned the boat, and due to its state of disrepair, petitioner made no more than six shrimp fishing trips in it. Petitioner experienced leakage problems with the boat due to the fact that it was of plank construction sealed with caulking. The boat was equipped with a pump that automatically *494 began operating when the water in the boat rose above a certain level. In late May 1981, the dockside power source failed and the boat sank at its mooring in a matter of 3 to 4 hours. Immediately after is sank, the boat was worth no more than half the amount of the note petitioner has signed. About 1 year after the sinking petitioner sold the boat for $ 1,010. Having decided to retire from the fishing business, petitioner secured employment with Simons Eastern Corporation (Simons Eastern) in Decatur, Georgia. This employment was secured through Omni International, Inc. (Omni) which was a specialized employment agency. Although employed by Simons Eastern, petitioner was paid by Omni. In addition to his regular salary, petitioner received $ 160 per week for living expenses. During 1981, he was paid $ 2,560 as reimbursement for such expenses. Petitioner remained employed by Simons Eastern until March 1982 at which time his services were no longer needed. He had been previously informed by both Simons Eastern and Omni that his services would be required for no more than 6 months. Prior to January 1, 1982, petitioner maintained a home in Houston, Texas. At the beginning *495 of 1982, he and his wife moved to Atlanta, Georgia. During the time that petitioner was employed in Decatur, but before he moved to Atlanta, petitioner stayed in temporary rented quarters in Decatur. Petitioner ate all his meals away from his quarters, but has no records of any of his expenses. OPINION The first issue is whether petitioner is entitled to a loss deduction for the sinking of the Captain Allen, and if so, how much. The first step in determining whether petitioner is entitled to a loss under section 165(a) is to decide if the Captain Allen was used by petitioner in his trade or business of commercial fishing during the latter part of 1980 and the first part of 1981, and sustained a loss when the boat sank. Alternatively, petitioner contends that he is entitled to a casualty loss deduction under section 165(a), subject to the limitations of section 165(h). Respondent contends that petitioner is entitled to no loss, in that petitioner did not use the boat in any trade or business, that the boat was not damaged or destroyed by any type of casualty, or alternatively that petitioner has failed to prove his basis in the boat. *496 In order for a taxpayer to be entitled to an ordinary loss under section 165(a) and not be subject to the restrictions imposed by section 165(h), he must show that he has sustained a loss in connection with his trade or business, and that the loss was incurred in the year in which he seeks the deduction. The general rule is that before a taxpayer may claim a loss for a business asset, he must either sell the asset, or if its usefulness in the business has been destroyed and it is not sold, he must permanently discard it from use in the business. A loss deduction is generally not permitted where there is a mere shrinkage in value. Rather, there must be a complete elimination of all value to the business plus a recognition by the owner that his property no longer has any utility to him evidenced by means of a specific act proving his abandonment of it. [3] Such is the nature of the "closed and completed transaction" requirement of section 1.165-1(d)(1), Income Tax Regs. As we stated in Proesel v. Commissioner,77 T.C. 992, 1005-1006 (1981): Such events include a sale, an abandonment, or other acts or events which reflect the fact that the property is worthless. * *497 * * Although a taxpayer need not be an incorrigible optimist in his determination of when property became worthless * * * a mere decline, diminution, or shrinkage in value is not sufficient to establish a loss * * *. [Citations omitted.] See also Reporter Publishing Co. v. Commissioner,201 F.2d 743 (9th Cir. 1953), affg. 18 T.C. 86 (1952). We find that petitioner did not sustain a trade or business loss in 1981, since he neither sold the boat for its salvage value nor abandoned or permanently retired the boat. The transaction was not closed and completed until 1982, when petitioner sold the boat for its salvage value. Since 1982 is not here in issue, petitioner is not entitled to a trade or business loss in 1981. However, section 165 provides an exception to the general rule by extending the casualty loss deduction of section 165(c)(3) to business assets. Abrams v. Commissioner,T.C. Memo. 1981-231. Section 1.165-7(a)(1), Income Tax Regs., provides that: any loss arising from fire, storm, shipwreck, or other casualty is allowable as a deduction *498 under section 165(a) for the taxable year in which the loss if sustained. * * * The manner of determining the amount of a casualty loss allowable as a deduction in computing taxable income under section 63 is the same whether the loss has been incurred in a trade or business or in any transaction entered into for profit, or whether it has been a loss of property not connected with a trade or business and not incurred in any transaction entered into for profit. * * * [4]
It is therefore left for us to decide whether the sinking of the Captain Allen was a loss arising from fire, storm, shipwreck, or other casualty as contemplated by the statute. We have defined a casualty as the result of events that are "sudden, unexpected, violent, and not due to deliberate or willful actions" on the part of the taxpayer. White v. Commissioner,48 T.C. 430, 433-434 (1967). However, a survey of the case law reveals that the presence of each of these elements is not required for a finding that a casualty loss *499 has been sustained. The event giving rise to the loss need not necessarily be sudden or violent. Hoppe v. Commissioner,42 T.C. 820 (1964), affd. 354 F.2d 988 (9th Cir. 1965). Further, foreseeability of a loss is a factor to be taken into consideration, but is not conclusive. Heyn v. Commissioner,46 T.C. 302, 308 (1966). However, no deductible casualty loss arises from "the progressive deterioration of property through a steadily operating cause." Fay v. Helvering,120 F.2d 253 (2d Cir. 1941). The sinking of the Captain Allen falls into that category of loss which is deductible as a casualty. While leakage was a chronic problem with the boat, [5] the boat would not have sunk at the time and in the manner that it did absent the failure of the pump. While in some instances, gradual deterioration may lead to a sudden, destructive event, the sinking of the Captain Allen was a direct result not of the boat's hull, but of the failure of the on-board water pump. Respondent has also contested the amount of the deduction claimed by petitioner. Section *500 1.165-7(b)(1), Income Tax Regs., concerning the amount deductible, states as follows: In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for the purposes of section 165(a) shall be the lesser of either -- (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in sec. 1011-1 for determining the loss from the sale or other disposition of the property involved.
The amount of loss may be determined by competent appraisal of the asset. Sec. 165-7(a)(2)(i), Income Tax Regs. The regulations provide that care must be taken so that the deductible loss is limited to that loss which is actually caused by the casualty, rather than general market decline. The cost of repairs is acceptable as evidence of the loss of value so long as the value of the asset after repair is no more than the value of the asset before the casualty. Sec. 1.165-7(a)(1)(ii), Income Tax Regs.
*501 Petitioner has the burden of proving the amount of any casualty loss to which he is entitled. Rule 142(a); see Welch v. Helvering,290 U.S. 111 (1930). Petitioner's evidence consists of no more than his own testimony and certain bank documents showing the amount of the note he signed in order to take possession of the boat. Such proof is far less than that contemplated by the regulations. However, having found that petitioner is entitled to a casualty loss in fact, we may approximate the allowable deduction "bearing heavily if [we choose] upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). [6]
Petitioner purchased the Captain Allen only 8 months before its sinking. Upon purchase, petitioner executed a note in favor of the Bank in the amount of $ 13,082.76. As the sales price in a transaction between a willing buyer and willing seller, this figure is indicative of the fair market value on the date of sale. Due to the age and condition of the boat, it would have suffered little depreciation in an economic *502 sense between October 1980 and May 1981. We therefore find that the fair market value of the Captain Allen on the date of its sinking was $ 13,000. Under the regulations, the pre-casualty fair market value must be reduced by the post-casualty fair market value in order to arrive at the deductible loss. [7]Sec. 1.165-7(b)(1), Income Tax Reg. After several attempts to sell the boat for a figure close to his investment, petitioner did not succeed in disposing of the boat until nearly 1 year after its sinking. The boat must have deteriorated in that time due to the mere fact that it was partially submerged. However, the regulations require us to look at the difference in fair market value immediately before and immediately after the casualty. We have found that the decrease in value of the boat as a result of its sinking is not out of line with petitioner's testimony that the value of the boat had decreased over 50 percent as a result of sinking. Consequently we find that petitioner has sustained a $ 6,500 casualty loss. *503 Petitioner also deducted $ 8,273 on his 1981 Federal income tax return for unreimbursed employee business expenses. Respondent contends that petitioner was not away from home when these expenses were incurred, or alternatively, that the substantiation requirements of section 274(d) are not met. Since petitioner has produced no records as required by section 274(d), we find for respondent on this issue. [8]
Section 274(d) disallows a deduction for any traveling expense for which the taxpayer does not keep adequate records of the amount and business purpose or where the taxpayer fails to substantiate by sufficient evidence corroborating his own statements. Included in the expenses subject to disallowance are those for meals and lodging while away from home. Sec. 274(d)(1). The requirements of section 274(d) are in addition to, and stand independently of, any other requirements for deductibility imposed by the Code. Sec. 1.274-1, Income Tax Regs. Although entitlement to a deduction must *504 first be established under another section of the Code, we need not decide whether such deduction is allowable under any other section when the requirements of section 274(d) are plainly not complied with. Petitioner has admitted that he has no records to substantiate any of his claimed expenses, and we therefore hold for respondent on this issue. The remaining issue is whether petitioner is liable for an addition to tax under section 6651(a)(1). Petitioner has come forward with no evidence showing that his failure to file a timely return was due to reasonable cause and not due to willful neglect. Petitioner having failed to meet the burden of proof imposed upon him, we find for respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. On March 19, 1981, the Bank paid $ 3,200 for expenses for repairs, transportation, and rental expenses in connection with the boat. This amount was added to the principal of the original loan. ↩
3. See Abrams v. Commissioner,T.C. Memo. 1981-231↩.
4. Since the allowance of a casualty loss is not dependent upon whether a taxpayer is engaged in a trade or business, we express no opinion concerning this issue.↩
5. Petitioner testified that all such boats were prone to leak. ↩
6. See Alexander v. Commissioner,T.C. Memo. 1984-653↩. 7. Although the difference between the two figures represents the loss attendant upon the casualty, petitioner is still subject to the limitations of sec. 165(h)↩. 8. Petitioner testified that he spent $ 45 per week for lodging while in Decatur. However, petitioner has produced no substantiation or corroborating evidence as required by sec. 274(d)↩.