**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ROBERT V. GEORGE,

        Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

        Defendant-Appellee.

No. 96-1306
(D.C. No. 94-B-2769)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before BRORBY, BARRETT, and MURPHY, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff, an attorney proceeding pro se, brought this action seeking a refund of income taxes in the amount of $17,966. The United States filed a counterclaim, pursuant to 26 U.S.C. § 7405(b), asserting that plaintiff had received an erroneous refund in the amount of $9,719.24. On cross-motions for summary judgment, the district court entered judgment for the United States in the amount of $9,719.24. Plaintiff now appeals. We review the grant or denial of summary judgment de novo, applying the same standards as the district court under Fed. R. Civ. P. 56(c). See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

At issue are certain deductions claimed by plaintiff for various business-related losses he allegedly suffered. In February 1988, plaintiff purchased a piece of property, located at 20 North Avenue in Larchmont, New York, on which was situated an office building. Plaintiff made a cash down payment of approximately $183,000 on the purchase price and financed the remainder through a loan from Dry Dock Dollar Bank (DDDB) in the principal amount of $980,000. This purchase-money loan was secured by a first mortgage on the property. In addition, plaintiff's wholly-owned corporation, Skyhook, Inc., executed a "General Guarantee," in which it unconditionally guaranteed plaintiff's payments under the note to DDDB.

On the day he purchased the property, plaintiff and Skyhook executed a Master Lease on the building, pursuant to which Skyhook was the master tenant. Skyhook also executed a document entitled "Promissory Note," in which it agreed, among other things, that if it should default on its General Guarantee to DDDB or on its Master Lease with plaintiff, then Skyhook would "unconditionally indemnify [plaintiff] for any losses which he may incur with respect to his initial equity investment of One Hundred and Eighty Three Thousand Dollars ($183,000.00) as a result of SKYHOOK Inc.'s default." R. Vol. I, Doc. 45, at 496.

In June 1988, Skyhook, which was engaged in the business of renting, selling, and servicing aerial lifts used in the construction industry, entered into an equipment lease with Integrated Resources Equipment Group. Plaintiff personally guaranteed Skyhook's obligations under the lease with Integrated. As part of the lease transaction, Integrated required Skyhook to provide a $225,000 letter of credit, against which Integrated could draw if Skyhook failed to make timely payments under the rental agreement. To fund the letter of credit, Skyhook borrowed $225,000 from Westport Bank & Trust (WBT). Plaintiff executed a personal guaranty of this loan, which he secured with a second mortgage on his 20 North Avenue property. The proceeds of the WBT loan were placed in a

passbook savings account at WBT, which then issued an irrevocable letter of credit in the amount of $225,000 in Skyhook's name for the benefit of Integrated.

Skyhook failed to make timely lease payments to Integrated in 1989, resulting in draws against the letter of credit, totaling $117,201.62. Skyhook also failed to make timely payments in 1990, resulting in additional draws, totaling $107,798.38, which was the remaining balance of the letter of credit. Each time Integrated made a draw against the letter of credit, Skyhook executed a promissory note to plaintiff, payable on demand, in the amount of the draw. Each note recited that it was "[i]n consideration for payment of Integrated Resources lease #6461." E.g., R. Vol. I, Doc. 45, at 951. Plaintiff received five such demand notes from Skyhook in 1989 and 1990, totaling $225,000.

During most of 1990, plaintiff failed to make the required payments on his note to DDDB. In October 1990, DDDB declared the note in default and, having refused to release plaintiff from either his personal liability on the note or any deficiency judgment, instituted foreclosure proceedings against the property at 20 North Avenue. DDDB purchased the property at the sheriff's sale in 1991 for $675,000 and obtained a deficiency judgment against plaintiff for $446,687.87.

Meanwhile, Skyhook filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on January 28, 1990. The Chapter 11 proceedings were converted to liquidation proceedings under Chapter 7 on November 26, 1990. In

light of Skyhook's bankruptcy and its default on the $225,000 note to WBT, the latter pursued plaintiff on his personal guaranty. WBT obtained a judgment against plaintiff for $225,000, which plaintiff was able to settle for $25,000 in 1992.

The Commissioner of Internal Revenue allowed plaintiff a deduction for tax year 1991 under 26 U.S.C. § 165 for the loss of the 20 North Avenue property. Plaintiff does not dispute the amount of the deduction allowed, which was $193,801. Plaintiff does however, dispute the timing of the loss and the corresponding deduction. He contends that he should have been allowed the deduction for tax year 1990, when, he claims, he abandoned the property to DDDB and/or the property became worthless to him. The Commissioner, in turn, contends that, because the note underlying the first mortgage was a recourse note, plaintiff's loss on the property was not ascertainable until the actual foreclosure sale in 1991, at which time the amount of any deficiency judgment could be determined.

The Internal Revenue Code allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a). "To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable

events, and . . . actually sustained during the taxable year." 26 C.F.R. § 1.165-1(b).

The district court concluded that plaintiff's arguments pertaining to the abandonment or worthlessness of his property were inapplicable here, because the underlying debt to DDDB was a recourse obligation. When a mortgagee forecloses on a mortgage securing a recourse debt, the mortgagor may be liable for a deficiency judgment, which, in turn, may affect the amount of the mortgagor's tax loss on the property.

In Helvering v. Hammel, 311 U.S. 504, 512 (1941), the Supreme Court held that the foreclosure sale itself was "the definitive event establishing the loss within the meaning and for the purpose of the revenue laws." The Court explained: "The sale, which finally cuts off the interest of the mortgagor and is the means for determining the amount of the deficiency judgment against him is a means adopted by the statute for determining the amount of his capital gain or loss from the sale of the mortgaged property." Id.

In Commissioner v. Green, 126 F.2d 70, 71-72 (3d Cir. 1942), the Third Circuit relied upon Hammel in concluding that the taxpayers could not deduct their loss on property given as security for a recourse obligation in the year they allegedly abandoned the property, but had to take the loss in the next year, when the property was sold at the sheriff's sale upon foreclosure of the mortgage. The court distinguished a Second Circuit case, which had allowed the deduction to be

taken in the year of abandonment, on the ground that the nonrecourse nature of the underlying obligation at issue in the Second Circuit case "was of fundamental importance to the decision in that case." Id. at 72. The Third Circuit then went on to state that, when the mortgaged property secures a recourse obligation, "the property continues until foreclosure sale to have some value which, when determined by the sale, bears directly upon the extent of the owner's liability for a deficiency judgment." Id.; cf., Middleton v. Commissioner, 77 T.C. 310, 321-23 (Tax Ct. 1981) (acknowledging Third Circuit's holding in Green, but concluding that taxpayers could take loss deduction in year they abandoned the property, where the underlying obligation was a nonrecourse debt and it was not necessary to await the completion of the foreclosure to fix the amount of the loss because the parties stipulated to the exact amount of loss sustained), aff'd, 693 F.2d 124 (11th Cir. 1982).

Although plaintiff cites a number of cases in which courts have permitted taxpayers to take a loss on mortgaged property in the year in which they established either abandonment or worthlessness of the property, none of those cases involved recourse obligations. Nor does plaintiff explain how the tax loss on his property would have been calculated in 1990, before the foreclosure sale. Therefore, we conclude that the district court did not err in upholding the

Commissioner's determination that plaintiff was entitled to the deduction on the loss of his real property in 1991, the year in which it was sold at the sheriff's sale.

Alternatively, plaintiff contends that he is entitled to a deduction in the amount of $183,000 for tax year 1990, under 26 U.S.C. § 166. Section 166 covers deductions arising from bad debts. Plaintiff argues that he suffered a bad debt loss in 1990 when Skyhook failed to make good on its promise, contained in the February 1988 "Promissory Note," to indemnify him for losses to his initial investment of $183,000 in the 20 North Avenue property resulting from Skyhook's default under the Master Lease or the General Guarantee.

"An obligation to repay that is contingent upon the happening of a future event is not a valid debt until the time that the contingency occurs. No bad debt deduction may be taken for such a contingent liability until the contingency has crystallized into fact." Mertens Law of Federal Income Taxation, § 30.15, at 47 (1995) (footnote omitted). We agree with the district court that the contingency covered by Skyhook's promise to pay did not occur until 1991, when plaintiff lost his interest in the property through foreclosure. Moreover, plaintiff has already been allowed a tax deduction under § 165 for the loss of his investment in the property, and he cannot claim a second tax loss under § 166 arising from the same economic loss. See, e.g., Mertens, § 30.41, at 95-6 ("There is a distinction between losses and worthless debts, and the two are mutually exclusive in the

sense that the same transaction cannot give rise to both a bad debt and a loss deduction.") (footnotes omitted).

Plaintiff also disputes the Commissioner's treatment of his losses arising from the transaction with WBT. The Commissioner allowed plaintiff a $25,000 deduction in 1992 under § 166 for the money he actually paid to WBT on his guaranty. See 26 C.F.R. § 1.166-9(a),(d) (treating taxpayer's payment in discharge of guaranty as bad debt under 26 U.S.C. § 166). Plaintiff argues that, in addition to the $25,000 deduction for his cash outlay on the guaranty, he is also entitled to a $225,000 deduction. Plaintiff advances two theories in support of an additional $225,000 deduction. First, he argues that he is entitled to a bad debt deduction, under § 166, for Skyhook's failure to make good on the five promissory notes it executed in 1989 and 1990 when Integrated made draws against the letter of credit. The Commissioner responds by arguing that plaintiff had no basis in the notes and suffered no actual loss when Skyhook failed to pay them that would support a bad debt deduction under § 166. Second, plaintiff contends that he is entitled to a § 165 loss because he placed his $225,000 equity in the 20 North Avenue property "at risk," as defined by § 465, in connection with the equipment lease with Integrated. The Commissioner responds by noting that § 465 is not an independent basis for a deduction and that plaintiff must still establish that he suffered an actual loss of $225,000, which he has failed to do.

We will address each of plaintiff's arguments in turn. In general, the internal revenue laws use, as the basis for determining the amount of deduction for a bad debt under § 166, the adjusted basis prescribed by 26 C.F.R. § 1.1011-1 for determining the gain or loss from the sale or other disposition of property. See 26 C.F.R. § 1.166-1(d). Section 1.1011-1, in turn, refers to 26 U.S.C. § 1012, which provides that "[t]he basis of property shall be the cost of such property." "The cost is the amount paid for such property in cash or other property." 26 C.F.R. § 1.1012-1.

Plaintiff argues that he effectively paid $225,000 for the five notes from Skyhook by pledging his equity in the 20 North Avenue property as security for his guaranty of Skyhook's payments under its $225,000 note to WBT. He argues that he was permanently deprived of his $225,000 equity in the property when Integrated made draws against the letter of credit that was funded with proceeds from WBT's loan to Skyhook. The Commissioner, on the other hand, contends that plaintiff did not pay anything for the notes, so he has no basis in the notes and, therefore, he did not suffer any actual loss when the notes were not paid.

We agree with the Commissioner that plaintiff had no basis in the notes because he did not pay for the notes in cash or other property. Plaintiff did not pay either WBT or Integrated $225,000 on behalf of Skyhook. Plaintiff simply executed a guaranty to WBT, which he secured with a second mortgage on his

property. Integrated's draws against the letter of credit did not affect plaintiff's liability on his guaranty or his interest in the real property, and payment of those draws did not constitute consideration for the five promissory notes Skyhook gave plaintiff. Although plaintiff was ultimately deprived of his $225,000 equity interest in the 20 North Avenue property, that deprivation resulted from the foreclosure by DDDB, and the Commissioner has already allowed plaintiff a deduction for that loss.

We turn, then, to plaintiff's second argument, which is based on the provisions of § 465 relating to losses from certain covered activities. Section 465(a)(1) provides that deductions for losses arising from covered activities "shall be allowed only to the extent of the aggregate amount with respect to which the taxpayer is at risk . . . for such activity at the close of the taxable year," and § 465(b) defines amounts considered "at risk." From these provisions, and related case law, plaintiff argues that he placed his $225,000 equity in the 20 North Avenue property "at risk" in a covered activity (the lease of equipment) when he pledged the property as security for his guaranty of Skyhook's note to WBT and, therefore, that he should be allowed a $225,000 deduction. As the Commissioner correctly points out, however, regardless of whether plaintiff placed his equity interest in the property "at risk" in connection with the equipment lease transaction, he did not suffer an actual loss of that interest as a result of the

transaction, so there is no ground for a deduction. The only loss plaintiff suffered in connection with the equipment lease transaction was the loss of $25,000 that he paid in satisfaction of his guaranty, which loss the Commissioner has allowed plaintiff to deduct.

Based upon the foregoing, we conclude that the district court properly entered summary judgment against plaintiff and in favor of the United States on their respective claims. The Commissioner has allowed plaintiff deductions for all of the actual losses he incurred in connection with the transactions at issue here. No matter how he attempts to characterize events, plaintiff may not take multiple tax losses for a single economic loss.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge